**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

TODD JOHNSON,

        Plaintiff,

vs.

DOLLAR GENERAL; DOLGENCORP,
L.L.C.; and MICHAEL WILLIAMS,

        Defendants.

No. C 11-3038-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION**............................................................................. 3
    A.    *Factual Background* ............................................................ 3
    B.    *Procedural Background* ...................................................... 8

II.    ***LEGAL ANALYSIS*** ...................................................................... 12
    A.    *Standards For Summary Judgment* ........................................ 12
    B.    *Johnson's FMLA Claims*................................................... 17
        1.    *Arguments of the parties*............................................. 17
            a.    *The defendants' opening arguments* ......................... 17
            b.    *Johnson's response* ............................................. 19
            c.    *The defendants' reply* ......................................... 21
        2.    *Analysis* ............................................................... 22
            a.    *FMLA overview* .................................................. 22
            b.    *FMLA "interference" claims* ................................. 24
                i.    *Nature and proof* ........................................ 24
                ii.    *Johnson's "interference" claims* .................... 28
            c.    *FMLA "retaliation" claim*..................................... 32
                 i.    *Nature and proof* ........................................ 32
                ii.    *Johnson's "retaliation" claim*........................ 44
    C.    *Johnson's Workers Compensation Retaliation Claim* ..................... 48
        1.    *Arguments of the parties*............................................. 48
        2.    *Analysis* ............................................................... 50

          *a.*      *Individual liability* ................................................ *50*
          *b.*      *Proof of the claim*............................................... *50*
    *D.*    *Johnson's Emotional Distress Claim* ......................................... *55*
    *E.*    *Johnson's Claim For Payment Of A Bonus* ................................. *56*
        *1.*    *Arguments of the parties*.............................................. *56*
        *2.*    *Analysis* ................................................................. *57*
*III.*   *CONCLUSION*............................................................................. *60*

In this action, which was removed to this federal court, a former store manager alleges that the retail store chain for which he worked and his district manager terminated him when he missed work for five days approximately five months after he suffered a heart attack. He asserts state-law claims of retaliation for processing workers compensation claims and intentional infliction of emotional distress and a federal claim of violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2612–2615, arising from the termination of his employment. He also asserts a claim pursuant to the Iowa Wage Payment Collection Law (IWPCL), Iowa Code Ch. 91A, to recover a quarterly bonus allegedly due him at the time his employment ended. The store chain and the district manager have moved for summary judgment on all of the former store manager's claims. They argue, among other things, that there is no genuine dispute that the store manager resigned his job without coercion from his employers; that he did not suffer from a "serious health condition" and cannot meet other requirements of his FMLA claims; that he did not engage in any protected activity related to workers compensation claims and was not subjected to any adverse employment action if he did; that his "emotional distress" claim is pre-empted by

Iowa's workers compensation law; and that he was not entitled to any bonus, because he was not employed on the date of the bonus payout. Although the former store manager concedes that his "emotional distress" claim is not viable, he resists summary judgment on his other claims. Thus, I must determine whether any of the former store manager's three disputed claims should be heard by a jury.

## I.    INTRODUCTION

### A.    Factual Background

I set forth here only those facts, disputed and undisputed, sufficient to put in context the parties' arguments concerning the defendants' motion for summary judgment. Unless otherwise indicated, the facts recited here are undisputed, at least for purposes of summary judgment. I will discuss additional factual allegations, and the extent to which they are or are not disputed or material, if necessary, in my legal analysis.

Defendant Dolgencorp, L.L.C., is a corporation that operates a chain of retail stores under the trade name "Dollar General." The plaintiff and the defendants have referred to the corporate defendant as "Dollar General," and I will do the same. Dollar General hired plaintiff Todd Johnson in December 2007 and, after an initial period of training, assigned him to be the manager of the Dollar General store in Garner, Iowa, beginning in January 2008. Store managers report to a district manager or DM. Johnson's DM from June 2008 until the end of Johnson's employment with Dollar General was defendant Michael Williams.

Johnson received an employee handbook outlining Dollar General's FMLA policy, received additional training on that policy, and was aware of posters in his store that addressed FMLA policies and issues. Dollar General's vacation policy generally required scheduling of vacations 30 days in advance, with exceptions allowed by the

DM.  Dollar General's attendance and absence policies required an employee to call the employee's supervisor if the employee could not report to work as scheduled and also provided that store managers were expected to discuss the situation "live" with a supervisor.   Dollar General did not provide "sick leave."   In addition to regular compensation, Dollar General maintained a "Teamshare" bonus plan under its Retail Incentive Plan, which provided quarterly bonuses to eligible store managers.   The eligibility requirements for such a bonus were, in pertinent part, that the store manager was "[a]ctively employed in an eligible position during the fiscal year" and "[e]mployed with Dollar General through the bonus calculation period and on the date of bonus payout . . . [u]nless otherwise required by state law."   Defendants' Appendix at 50 (Fiscal Year 2009 Store Manager Retail Incentive Plan).

Johnson suffered a knee injury at work in October 2008, which caused him to miss a few days of work.  Johnson received workers compensation benefits for that injury.  Although Dollar General asserts that Johnson had no communications with Williams about the October 2008 workers compensation claim, and Johnson does not allege any negative response to it by Williams, Johnson asserts that Williams was aware of this injury, because Williams told Johnson he was aware that a workers compensation claim had been filed.

On or about November 18, 2008, Johnson suffered a heart attack at work and was hospitalized for approximately a week.  Johnson contacted Dollar General's corporate offices to report his heart attack and the need for medical leave.  Johnson's medical providers did not clear him to return to work until December 30, 2008.  Dollar General provided "company" leave for the entire period of Johnson's absence owing to his heart attack, because Johnson was not yet eligible for FMLA leave.  Medical records from December 18, 2008, indicate that Johnson was diagnosed with "severe coronary artery disease," and other records indicate that he continued on various

medications for that condition at least through 2009. Johnson filed a workers compensation claim alleging that his heart attack was the result of work-related stress. The parties agree that Williams did not know that Johnson had claimed that this heart attack was a work-related injury. The parties' statements of fact and cited portions of the record do not indicate whether Johnson received workers compensation benefits, as well as company leave, for the November 2008 heart attack and recovery period.

In January 2009, after Johnson returned to work, Williams provided him with a performance evaluation that assigned him an overall rating of "good." Nevertheless, Johnson contends that Williams treated him differently from other store managers after he returned to work. Specifically, Johnson contends that Williams pressured him to get his store back to "model store" status in a short period of time, without providing him with extra payroll to do so. He contrasts this treatment with that of another store manager, "Penny," who was allowed extra payroll to meet "model store" status and to get ready for district manager meetings. Johnson admits that his store was not returned to "model store" status within 48 hours after his return from leave, but he also admits that he did not ask either Williams or the regional manager for extra payroll to bring his store back to "model store" conditions and that he was not disciplined or subjected to any other adverse employment action because he failed to return the store to "model store" status.

The parties dispute the various details of what happened from April 30, 2009, through May 6, 2009, at the end of Johnson's employment with Dollar General. For purposes of summary judgment, however, they agree that Johnson was not feeling well on the morning of April 30, 2009, because he was suffering from flu-like symptoms. Johnson worked until about noon, when his assistant manager, Lesa Eckert, came in to work. Johnson told Eckert that he was not feeling well and was going home. Although Johnson testified in deposition that he believed that he had contacted his doctor's office

more than once on April 30 and May 1, 2009, the only medical record in the summary judgment record from about this time period[1] is the following note in the records of Mercy Family Clinic-Clear Lake, from a call taken by a medical assistant at 11:37 a.m. on May 1, 2009:

> Phone call from Todd c/o "not feeling well for a couple of days." He states he has had diarrhea, fever and extreme fatigue that is worse with standing. He wonders what to do. Due to his previous history Dr Mixdorf was consulted and these were the same symptoms he presented with when he had his MI [myocardial infarction (heart attack)]. He was advised that he needed to be evaluated in the ER. The patient refuses this stating, "I know for a fact that it isn't [sic] the flu, I was exposed to this by my co-workers and my sig. Other. It is not a heart attack." He was then advised that he should be evaluated in the office by the call doctor. He refuses appt but states, "I'll see how I feel and if I feel like I need to be seen, I'll call." Denise, Dr Bruntings nurse was informed. D. Alden, MA.

Plaintiff's Appendix at 65. Johnson did not seek further medical attention for his symptoms.

The parties dispute whether Johnson actually went in to work on May 1, 2009, or only telephoned his assistant manager, Lesa Eckert, that day. However, they agree that, at some point, Johnson spoke to Eckert and requested five days of vacation, the full amount of vacation that he had accrued at that time, because Dollar General did not have sick leave. Johnson claims that he planned to return to work sooner, if his condition improved, but admits that he did not convey that plan to anyone at Dollar General. Notwithstanding that Johnson had not actually seen a doctor and that, when he did speak to someone at his doctor's office, he complained of different symptoms,

---

[1] The Plaintiff's Appendix also includes notes from office visits by Johnson on April 6, 2009, Plaintiff's Appendix at 66; May 19, 2009, *id.* at 64; and June 3, 2009, *id.* at 63.

the parties agree that Johnson left Williams a voicemail on May 1, 2009, stating that he had been to the doctor owing to chest pains. Johnson also stated in the voicemail that the doctor had told him to stay home over the weekend to get some rest, although no such instruction appears in the medical assistant's notes of Johnson's call to his doctor's office on May 1, 2009.

The parties agree that, also on May 1, 2009, Williams left voice messages for Johnson. Johnson asserts that there were approximately four or five such messages and that he believed that they were "threatening." Johnson contends, and the defendants dispute, that the substance of Williams's messages was that Johnson needed "to get his ass back in the store" and that Williams was not responsible for running Johnson's store. Other than the conversation with Eckert on May 1, 2009, Johnson did not contact Williams or anyone else at Dollar General from May 1 through May 5, 2009. On May 5, 2009, between about 8:00 a.m. and 10:00 a.m., Williams left a voice message for Johnson, apparently while Johnson was sleeping. Johnson contends, and the defendants dispute, that Williams told Johnson in that message that Johnson had half an hour to return his call, or Johnson would be terminated.

Johnson did not call Williams until approximately 12:30 a.m. on May 6, 2009, when he left Williams the following voicemail:

> Mike this is Todd.
>
> This has been a really tough decision for everybody, but due to a lot of extra stress, right now, I guess I don't have any choice but to step aside and let somebody else in, um, there is just too many health reasons to keep going at this point, I've been really sick for the last few days and at this point, I think I just need to step aside for medical reasons. Sorry I haven't been returning your calls, not been feeling very well, we'll make sure you get your keys, the only thing I think I have at the store is probably a radio that Josh can pick up. At this point I don't see any choice but to step

aside for medical reasons, I wish it could have turned out
different.  Have a good night, talk to you soon.

Defendants' Appendix at 31 (Johnson Deposition Exhibit 13).  The parties agree that
Johnson "resigned" on May 6, 2009, but Johnson now contends that his resignation was
a "constructive discharge."

Dollar General did not pay Johnson a quarterly bonus payment that Johnson
claims he was entitled to at the end of his employment.  Dollar General contends that
the pertinent fiscal quarter ended May 1, 2009, and that the bonus payout date for the
quarter was June 5, 2009, but Johnson was not employed with Dollar General on the
bonus payout date, so he was not eligible for the bonus.  Johnson contends that state
law required payment of the bonus, notwithstanding that he was not employed on the
bonus payout date.

## B.    *Procedural Background*

Johnson originally filed this action in the Iowa District Court for Hancock
County on July 22, 2010, naming Dollar General, Dolgencorp, L.L.C., and Michael
Williams as defendants.  In his original state-court petition, Johnson asserted state-law
claims of retaliation for processing workers' compensation claims and intentional
infliction of emotional distress, arising from his treatment after his heart attack and at
the end of his employment, and violation of the Iowa Wage Payment Collection Law,
arising from failure to pay a quarterly bonus earned before the end of his employment.
The defendants filed a joint answer to Johnson's state-court petition on October 12,
2010, denying Johnson's claims and asserting numerous affirmative defenses.

Johnson also filed a concurrent action in this federal court on July 26, 2010,
against the same defendants, asserting that he was terminated in May 2009 in violation
of the FMLA and further claims that the defendants refused to offer Consolidated

Omnibus Budget Reconciliation Act (COBRA) benefits to him at the end of his employment, in violation of the Employee Retirement Income Security Act of 1974 (ERISA), as amended by COBRA. *See, e.g., Johnson v. Dollar General*, 778 F. Supp. 2d 934 (N.D. Iowa 2011). However, on February 15, 2011, I dismissed all of Johnson's claims in his first federal action, *without prejudice*, on the defendants' Rule 12(b)(6) motion to dismiss. *Id.*

On July 12, 2011, Johnson sought, and on July 22, 2011, the state court granted, leave to amend his state-court petition to add an FMLA claim. On August 10, 2011, on the basis of the addition of that federal claim to the lawsuit, the defendants removed this action to this federal court. *See* Defendants' Notice Of Removal (docket no. 2). On August 11, 2011, Johnson's Amended Petition And Jury Demand, now properly styled an Amended Complaint, were refiled in this action as docket no. 3.

Because the claims in Johnson's Amended Complaint are now before me on a motion for summary judgment, I will describe them in more detail. The first three "counts" of Johnson's Amended Complaint assert state-law claims. **Count I** is a claim of retaliation for processing workers compensation claims, against both Dollar General and Williams, repleading by reference prior paragraphs of the Amended Complaint, and alleging that Johnson was pursuing workers compensation claims with the defendants at the time of his termination, that he was willfully terminated in the midst of a dispute concerning the workers compensation claims and his medical condition at the time of termination, and that he was terminated, in part, owing to the making and pursuing of workers compensation claims. **Count II** is a claim of intentional infliction of emotional distress, again against both defendants, repleading by reference prior paragraphs of the Amended Complaint, and alleging that the actions of the defendants were reckless, willful, and wanton, outrageous, done intentionally to cause emotional distress or were with reckless disregard of the probability of causing emotional distress,

and had proximately caused Johnson severe or extreme emotional distress.  **Count III** is a claim pursuant to the Iowa Wage Payment Collection Law, again against both defendants, repleading by reference prior paragraphs of the Amended Complaint, and alleging that the defendants knowingly, willfully, and wantonly refused to pay, upon demand, a bonus that was rightfully earned as of May 1, 2009.  On each of these first three claims, Johnson seeks compensatory and punitive damages, interest allowed by law, costs of the action, and such other and further relief as may be just in the circumstances.

**Count IV** of Johnson's Amended Complaint sets forth a federal claim alleging violations of the FMLA, 29 U.S.C. §§ 2612-2615, against both defendants.  It repleads by reference prior paragraphs of the Amended Complaint, and alleges that Johnson took leave from his employment owing to a serious medical condition, that he was entitled to the protections of the FMLA, and that the defendants violated the FMLA in the following ways:  (a) in failing to give appropriate notices as to FMLA rights; (b) in failing to grant him his FMLA leave; (c) in retaliating against him for having exercised his FMLA rights; (d) in discriminating against him for having utilized his FMLA rights; and (e) by using a pretext solely to justify terminating him.  It also alleges that the conduct of the defendants was willful.  On this claim, Johnson seeks the following relief:  Judgment that the defendants' conduct violated 29 U.S.C. §§ 2612-2615 of the FMLA; an injunction pursuant to 29 U.S.C. § 2617(1)(B) directing the defendants (a) to rehire Johnson to his prior position, (b) to place Johnson on FMLA leave as required by statute, and (c) to reinstate Johnson to all of his employment benefits, including, but not limited to, health insurance, all retroactive to May 5, 2009; judgment for lost wages, salary, employment benefits, or other compensation; judgment for other "monetary losses" resulting from his discharge, including any and all emotional distress damages; judgment for reasonable attorney fees and costs; judgment for liquidated

damages; and judgment for such further and additional relief, including back pay, loss of future pay, and/or front pay, as the court may deem just and proper.

Although the defendants removed this action to this court on the basis of Johnson's FMLA claim, the record in federal court did not show that they ever filed an answer to the Amended Complaint in either state or federal court, nor did their Scheduling Order and Discovery Plan (docket no. 10), approved by the court on November 18, 2011, provide a deadline for any answer. The Scheduling Order did, however, provide for a dispositive motion deadline of April 30, 2012, and a trial ready date of September 4, 2012. An Order Setting Trial, Final Pretrial Conference, And Requirements For Final Pretrial Order (docket no. 11) was filed on November 30, 2011, setting trial in this matter for September 24, 2012. On March 23, 2012, the parties filed Stipulations About Discovery Obtained Prior To Removal (docket no. 13), but there was no stipulation adopting the defendants' answer to Johnson's FMLA claim in his prior, dismissed federal action or stipulating that no answer was required.

Eventually, on April 30, 2012, the defendants filed their Motion For Summary Judgment (docket no. 14) now before the court. As noted above, the defendants seek summary judgment on all of Johnson's claims in his Amended Complaint. After an extension of time to do so, Johnson filed his Resistance To Motion For Summary Judgment (docket no. 18) on May 31, 2012, and on June 11, 2012, the defendants filed their Reply (docket no. 22) in further support of their Motion For Summary Judgment.

No party requested oral arguments on the defendants' Motion For Summary Judgment in the manner required by applicable local rules. Nevertheless, by Order (docket no. 24), filed July 11, 2012, I set oral arguments on the defendants' Motion For Summary Judgment for July 19, 2012. At the oral arguments, Johnson was represented by Eric Michael Updegraff of Stoltze & Updegraff, P.C., in Des Moines,

Iowa.  The defendants were represented by Ellen L. Perlioni and Jason R. Elliott of Morgan, Lewis & Bockius, L.L.P., in Dallas, Texas.

At the oral arguments, I questioned the defendants about the absence of any answer to the Amended Complaint in the federal court records.  The defendants asserted that they had filed an answer to the Amended Complaint on or about August 1, 2011.  On July 19, 2012, the defendants e-mailed me a copy of their Answer To Plaintiff's Amended Petition, filed in state court on August 3, 2011, and on July 20, 2012, the defendants filed their Unopposed Motion For Leave To Supplement Notice Of Removal (docket no. 26), seeking leave to supplement the pleadings with their Answer To Plaintiff's Amended Petition.  The defendants were granted leave to supplement the pleadings by Order (docket no. 27), filed July 23, 2012, and their Answer To Plaintiff's Amended Petition was filed in this case as docket no. 28 on July 23, 2012.

The defendants' Motion For Summary Judgment is now fully submitted.

## II.    LEGAL ANALYSIS

### A.    Standards For Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . .").  Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c) (emphasis added);

*see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir.

2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, –––U.S. ––––, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) *quoting Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, *quoting Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).

In its *en banc* decision in *Torgerson*, the Eighth Circuit Court of Appeals expressly rejected the notion that summary judgment in employment discrimination

cases is considered under a separate standard, citing *Reeves* and *Celotex*.[2]  Instead, the court held as follows:

> Because summary judgment is not disfavored and is designed for "every action," panel statements to the contrary are unauthorized and should not be followed.  There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial.

*Torgerson*, 643 F.3d at 1043.  Therefore, I will consider the defendants' Motion For Summary Judgment in this employment discrimination case according to the same standards that I would apply in any other civil case.

However, I must first observe that stating the legal principles of summary judgment in employment discrimination cases is a simple task.  Applying those principles to the paper record that forms the judicial crucible that decides which

---

[2] The Eighth Circuit Court of Appeals had previously recognized, in a number of panel decisions, that summary judgment is "disfavored" or should be used "sparingly" in employment discrimination cases.  *See Torgerson*, 643 F.3d at 1043 (collecting such cases in an Appendix).  The rationales for this "employment discrimination exception" were that "discrimination cases often turn on inferences rather than on direct evidence. . . .," *E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001) (*en banc*) (citing *Crawford*, 37 F.3d at 1341; *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999)), and that "intent" is generally a central issue in employment discrimination cases.  *See, e.g., Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998) (citing *Gill v. Reorganized Sch. Dist. R-6, Festus, Mo.*, 32 F.3d 376, 378 (8th Cir. 1994)); *see Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005) (noting summary judgment is disfavored in employment discrimination cases because they are "'inherently fact-based.'" (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 806 (8th Cir. 2003))).  On the other hand, the Supreme Court recognized that, even in employment discrimination cases, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

plaintiffs may proceed to trial and which get dismissed is far more daunting.  Missing in the standard incantation of summary judgment principles is the role of experience. Justice Oliver Wendell Holmes wrote, "The life of the law has not been logic; it has been experience." OLIVER WENDELL HOLMES, THE COMMON LAW 1 (1881).  Thus, experience teaches that thoughtful deliberation of summary judgment in employment discrimination cases is grounded in the consideration of each case through a lens filtered by the following observations.

Employment discrimination and retaliation, except in the rarest cases, are difficult to prove.  They are perhaps more difficult to prove today—more than forty years after the passage of Title VII and the ADEA, more than twenty years after the passage of the ADA, and nearly two decades after the passage of the FMLA, which is at issue here—than during the earlier evolution of these anti-discrimination and anti-retaliation statutes.  Today's employers, even those with only a scintilla of sophistication, will neither admit discriminatory or retaliatory intent, nor leave a well-developed trail demonstrating it. *See, e.g., Riordan v. Kempiners*, 831 F.2d 690, 697-98 (7th Cir. 1987).  Indeed, the Fifth Circuit Court of Appeals recognized more than thirty-five years ago, that "[a]s patently discriminatory practices become outlawed, those employers bent on pursuing a general policy declared illegal by Congressional mandate will undoubtedly devise more sophisticated methods to perpetuate discrimination among employees." *Rogers v. EEOC*, 454 F.2d 234, 239 (5th Cir. 1971) (later relied on by the Supreme Court in *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986), as one of the principal authorities supporting recognition of a cause of action for hostile environment sexual harassment under Title VII).

My experience suggests the truth of that observation.  Because adverse employment actions almost always involve a high degree of discretion, and most plaintiffs in employment discrimination and retaliation cases are at will, it is a simple

task for employers to concoct plausible reasons for virtually any adverse employment action ranging from failure to hire to discharge. This is especially true, because the very best workers are seldom employment discrimination and retaliation plaintiffs due to sheer economics: Because the economic costs to the employer for discrimination or retaliation are proportional to the caliber of the employee, discrimination or retaliation against the best employees is the least cost effective. *See, e.g., id.* Rather, discrimination and retaliation plaintiffs tend to be those average or below-average workers—equally protected by Title VII, the ADA, the ADEA, or the FMLA—for whom plausible rationales for adverse employment actions are readily fabricated by employers with even a meager imagination. *See, e.g., id.*

Consequently, I turn to consideration of the parties' arguments for and against summary judgment with both the legal standards for summary judgment and the teachings of experience in mind.

### B.     *Johnson's FMLA Claims*

The parties have focused, in the first instance and in the greatest detail, on the sufficiency of Johnson's only federal claim, his claim of violations of the FMLA in **Count IV** of his Amended Complaint. Therefore, I will consider first the part of the defendants' Motion For Summary Judgment seeking summary judgment on that claim.

#### 1.     *Arguments of the parties*

##### a.     *The defendants' opening arguments*

The defendants argue, in essence, that, after re-asserting the same set of facts and cause of action in state court that I had dismissed in Johnson's first federal action, and despite ample opportunity for discovery, Johnson has still not buttressed his FMLA claim with evidence of material facts that would allow that claim to survive summary judgment. They make a four-pronged attack on this claim.

First, the defendants argue that Johnson did not qualify for FMLA leave, based on personal illness, because he lacked a "serious health condition." They argue that, although Johnson left work "ill" on April 30, 2009, he never obtained "treatment" from a physician, but only spoke with a medical assistant at his doctor's office, so that he clearly did not require "inpatient care," one alternative to show a "serious health condition." They also argue that he did not receive "continuing treatment," another alternative to show a "serious health condition," because he did not have even one in-person treatment with a healthcare provider.

Second, the defendants argue that they had no notice of Johnson's need for FMLA leave, where Johnson did little or nothing more than "call in sick." They argue that it is clear that Johnson never gave his employer sufficient cause to believe that he required FMLA leave. Although they acknowledge that Johnson's only voicemail to Williams, on May 1, 2009, might have left Williams wondering about Johnson's condition, which was presumably why Williams kept calling Johnson, that single voicemail was not enough to suggest a need for FMLA leave, particularly where Johnson admits that he ignored further calls seeking information about his condition. They also point out that Johnson did not follow the procedures in Dollar General's FMLA policy for providing notice of a need for FMLA leave in April or May of 2009, even though Johnson had done so concerning his heart attack in November 2008. They also assert, in passing, that they could not have retaliated against Johnson for something he never did, which was try to exercise rights under the FMLA.

Third, the defendants contend that Johnson resigned, so he cannot establish that he was subjected to any "adverse employment action," which defeats his claim of "retaliation" under the FMLA. The defendants argue that, prior to May 6, 2009, when Johnson left his resignation voicemail for Williams, nobody at Dollar General had made a decision to terminate him or communicated to him that his employment was

terminated.  They point out that Williams disputes that he ever gave Johnson a half-hour deadline to respond to his voicemails, or Johnson would be fired.  Even if Williams had left such a voicemail, however, they argue that a mere threat of termination is not itself a termination or adverse employment action.

Finally, the defendants argue that there is simply no nexus between Williams's actions and the FMLA.  They argue that Johnson cannot rely on any supposed "attitude change" by Williams after Johnson returned to work after his November 2008 heart attack, because there is no dispute that the leave provided for that absence was "company" leave, not FMLA leave, when Johnson was not eligible for FMLA leave.  They also argue that the lack of any request by Johnson for FMLA leave in April or May 2009 also shows the lack of any causal connection.  They argue that Johnson relies on nothing but speculation to show a causal connection.

### b.    *Johnson's response*

Johnson attempts to counter each of the defendants' arguments for summary judgment on his FMLA claim.  In doing so, he appears to focus almost entirely on the viability of his FMLA "retaliation" claim.

First, Johnson argues that he *did* have a "serious health condition," pointing to medical evidence that he suffered from a number of serious heart conditions at the time that he informed the defendants that he was missing work again owing to chest pains.  Thus, he argues that, at that point, he had engaged in protected activity under the FMLA and he was entitled to the protections of the anti-retaliation provisions of the FMLA.  Somewhat more specifically, he argues that the severe coronary artery disease from which he suffered from at least November 2008 onward constituted a "serious health condition" within the meaning of the FMLA.  He points to evidence that his medication regimen for that condition continued through 2009.  He also argues that the defendants' intimation that his contact with his doctor's office on May 1, 2009, was

inconsequential, or even fictitious, is wrong, because he supplies the medical assistant's notes on that call, which he argues show that he was advised to seek treatment in the emergency room or at least to be evaluated by the clinic's on-call doctor.   Thus, he argues that the defendants' contention that his doctors did not consider his condition "serious" or worthy of inpatient care is simply erroneous and utterly lacking in any basis in the record.

Johnson also argues that a "serious health condition" is not necessary to make out a retaliation claim under the FMLA.   He argues that the defendants cannot avoid FMLA liability, simply because they terminated him before obtaining a full picture of his health situation.   He argues that an employee who *attempts* to exercise FMLA rights is protected from retaliation, which plainly suggests that he was not required to show that his attempt would have been successful.   He contends that the concept of "material adverse employment action" and the burden-shifting analysis of retaliation claims under Title VII have been applied in the FMLA context, so that a retaliatory action is a material adverse employment action when it might have dissuaded a reasonable worker from making or supporting an FMLA claim.   He argues that the retaliatory effect occurs, regardless of whether or not the claimant ultimately has a "serious health condition" under the FMLA.

As to the defendants' "notice" argument, Johnson argues that the circumstances present at the time of his phone call to Williams on May 1, 2009, were sufficient to make the defendants aware that he might need FMLA leave.   This is so, he argues, because the defendants knew that Johnson told Williams he needed time off because of chest pains just months after he had suffered a heart attack at work that required six weeks of leave.

As to the defendants' argument that there was no "adverse employment action" sufficient to sustain his FMLA retaliation claim, because he resigned, Johnson argues

that there are genuine issues of material fact as to whether Williams's actions constituted a "constructive discharge." He argues that a reasonable jury could find that Williams's multiple, threatening voicemails would have discouraged a reasonable employee from making a request for FMLA leave. He argues that his failure to mention the FMLA specifically in his notice of a need for time off is not dispositive of the question of whether or not Williams would have known that he needed FMLA leave. He also argues that Williams's repeated, hostile voicemails and threat of termination if he did not respond in thirty minutes were such that a reasonable employee would have found his situation intolerable and, thus, they raise a reasonable inference of intent to force him to quit.

Finally, Johnson argues that there is a nexus between protected activity and materially adverse employment action, because the record suggests that Williams was upset by Johnson's need for leave. He argues that the court would be hard-pressed to find a more direct connection between the need for time off and Williams's retaliatory conduct than Williams's belligerent statements about Johnson needing time off.

###### c.     *The defendants' reply*

In reply, the defendants argue that Johnson cannot carry over his "serious health condition" from his heart attack in 2008 to every subsequent instance in which he missed work. They reiterate that the record shows that Johnson complained to the medical assistant at his doctor's office on May 1, 2009, about "flu-like symptoms," not "chest pains," that he told the medical assistant that he was certain it was not a heart attack, and that he refused either emergency room treatment or an appointment with the on-call doctor at the practice. They point out that no in-person treatment or inpatient care ever occurred for his "condition" in late April and early May 2009 before Johnson resigned. They also argue that a vague reference to chest pains and the need to rest over the weekend (even if it had not been a false description of his symptoms and his

conversation with his doctor's office) is not enough to put an employer on notice of a need for FMLA leave, because it falls well short of an employee's duty to indicate both the need and the reason for the leave.   They also argue that Williams sought more information about Johnson's condition, but Johnson failed to meet his duty to respond. Finally, they point out that Johnson indicated to Williams that he needed to rest "over the weekend," but then failed to appear for work on Monday, without providing any additional information about his condition or his need for a longer absence.

The defendants also argue that eligibility for FMLA leave is a prerequisite for an FMLA retaliation claim, asserting that "[n]umerous other courts have uniformly held that a plaintiff cannot sustain a claim for FMLA retaliation without first showing an entitlement to FMLA leave," and citing four federal district court cases.   They also read Eighth Circuit law to recognize that an employee must "seek treatment" for a health condition that later proves to be "serious" to sustain an FMLA retaliation claim.

Finally, the defendants argue that Johnson raises his theory that he was "constructively discharged" for the first time in response to their Motion For Summary Judgment, but that doing so is not enough to amend his pleading to include it.   Even if such a contention had been properly raised, however, they argue that it would fail, because a few unreturned voicemails, left while the plaintiff was absent from work, cannot be considered working conditions, much less something so extraordinary and egregious as to be objectively intolerable.   They also point out that Johnson plainly failed to give Dollar General any opportunity to resolve the problem, before jumping ship.

### 2.   *Analysis*

#### a.   *FMLA overview*

As the Eighth Circuit Court of Appeals has explained,

> The FMLA provides employees with twelve work-weeks of leave during any twelve-month period if they have a serious health condition that makes them unable to perform the functions of their position. 29 U.S.C. § 2612(a)(1)(D). The leave may be taken intermittently if there is an agreement with the employer. *Id.* § 2612(b)(1).

*Ballato v. Comcast Corp.*, 676 F.3d 768, 772 (8th Cir. 2012); *accord Sisk v. Picture People, Inc.*, 669 F.3d 896, 899 (8th Cir. 2012).

In addition to creating a right to leave, the FMLA defines "prohibited acts" toward those who exercise or attempt to exercise FMLA rights or who oppose unlawful practices, including the following:

### (a) Interference with rights

#### (1) Exercise of rights

> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

#### (2) Discrimination

> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a).[3]   The Eighth Circuit Court of Appeals has held that § 2615(a) prohibits both "interference" with FMLA rights and "retaliation" for exercising FMLA

---

[3] The FMLA also defines the following as "prohibited acts":

### (b) Interference with proceedings or inquiries

> It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual—

rights.  *See, e.g., Ballato*, 676 F.3d at 772; *Chappell v. Bilco Co.*, 675 F.3d 1110, 1115 (8th Cir. 2012); *Lovland v. Employers Mut. Cas. Co.*, 674 F.3d 806, 810-11 (8th Cir. 2012); *Sisk*, 669 F.3d at 899.  Under Eighth Circuit law, these two kinds of claims are defined according to the "*Stallings* dichotomy."  *See Lovland*, 674 F.3d at 811 (citing *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050-51 (8th Cir. 2006)). Because Johnson appears to assert both kinds of FMLA claims, I will consider each kind in more detail.

> ### b.    FMLA "interference" claims

> ### i.    Nature and proof

Using the "*Stallings* dichotomy," "[i]n an interference claim 'the employee alleges that an employer denied or interfered with his substantive rights under the FMLA.'"  *Chappell*, 675 F.3d at 1115 (quoting *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008), in turn quoting *Stallings*, 447 F.3d at 1050); *accord Ballato*, 676 F.3d 772 ("'An employee can prevail under an interference theory if he was denied substantive rights under the FMLA for a reason connected with his FMLA leave.'" (quoting *Stallings*, 447 F.3d at 1050)).  Such a claim is based on § 2615(a)(1), which makes it "'unlawful for any employer to interfere with, restrain, or deny the exercise of

---

**(1)** has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;

**(2)** has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or

**(3)** has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

29 U.S.C. § 2615(b).

or the attempt to exercise, any right provided under [the FMLA].'" *Ballato*, 676 F.3d at 772 (quoting 29 U.S.C. § 2615(a)(1)).   Under Eighth Circuit law, "interference" claims are "limited . . . to situations where the employee proves that the employer denied a benefit to which she was entitled under the FMLA, which include terminating an employee while on FMLA leave." *Lovland*, 674 F.3d at 811 (citing *Wisbey v. City of Lincoln, Neb.*, 612 F.3d 667, 675 (8th Cir. 2010), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (*en banc*), in turn citing *Stallings*, 447 F.3d at 1050–51).   "Interference" situations also include using the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions, or counting FMLA leave under a "no fault" attendance policy, *Ballato*, 676 F.3d at 772, and "'manipulation by a covered employer to avoid responsibilities under [the] FMLA.'" *Chappell*, 675 F.3d at 1115 (quoting *Stallings*, 447 F.3d at 1050).

"[W]hen the employee asserts a § 2615(a)(1) claim that a right prescribed by the FMLA has been denied, [the Eighth Circuit Court of Appeals has] held that the employer's intent in denying the benefit is immaterial." *Lovland*, 674 F.3d at 811. "The initial burden of proof in an FMLA interference case is on the employee to show only that he or she was entitled to the benefit denied." *Ballato*, 676 F.3d at 772 (internal quotation marks omitted).   However, FMLA benefits are contingent upon the employee having "a serious health condition that makes [him] unable to perform the functions of [his] position." *Rynders v. Williams*, 650 F.3d 1188, 1195 (8th Cir. 2011).   Thus, to prove the requirement for an interference claim that the plaintiff was entitled to the benefit denied, the plaintiff must prove that he or she suffered from "a serious health condition." *Id.*; *see also Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 975 n.2 (8th Cir. 2005) (identifying the elements of an "interference" claim as including proof that the conditions from which the plaintiff suffered were

"serious health conditions"); *Rankin v. Seagate Techs., Inc.*, 246 F.3d 1145, 1147 (8th Cir. 2001) ("Where absences are not attributable to a 'serious health condition,' however, [the] FMLA is not implicated and does not protect an employee against disciplinary action based upon such absences.").

The Eighth Circuit Court of Appeals has explained,

> In enacting the FMLA Congress did not intend to cover leave for "short-term conditions for which treatment and recovery are very brief." *See Martyszenko v. Safeway, Inc.*, 120 F.3d 120, 123 (8th Cir. 1997) (quoting S.Rep. No. 103-3, at 28 (1993)). Only absences "attributable to . . . serious health conditions" are protected. *Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 853 (8th Cir. 2002). Examples of conditions which would ordinarily not be covered include "the common cold, the flu, ear aches, upset stomach, minor ulcers, [and] headaches other than migraine." 29 C.F.R. § 825.114(c) [now 29 C.F.R. § 825.113(d)].

*Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005); *but see Rankin*, 246 F.3d at 1147 (observing that "conditions like the common cold or the flu will not routinely satisfy the requirements of a 'serious health condition,'" but that "absences resulting from such illnesses are protected under FMLA when the regulatory tests are met"). A serious health condition "'means an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider.'" *Rynders*, 650 F.3d at 1195-96 (quoting 29 U.S.C. § 2611(11)).

Johnson does not contend that he can satisfy the "inpatient care" prong of this definition. Thus, I will consider only the "continuing treatment" prong in more detail. The "continuing treatment" prong is subject to an "objective test," requiring the claimant to prove the following: "(1) that she had a 'period of incapacity requiring absence from work,' (2) that this period of incapacity exceeded three days, and (3) that

she received 'continuing treatment by . . . a health care provider' within the period." *Rankin*, 246 F.3d at 1147-49 (quoting *Thorson v. Gemini, Inc.*, 205 F.3d 370, 377 (8th Cir. 2000), and citing former 29 C.F.R. § 825.114(a), now 29 C.F.R. § 825.115(a)); *see also Woods*, 409 F.3d at 990. Furthermore, "treatment by a health care provider means an in-person visit to a health care provider," and "[t]he first (or only) in-person treatment visit must take place within seven days of the first day of incapacity." 29 C.F.R. § 825.115(a)(3).

Furthermore, the employee must show that he or she gave the employer adequate and timely notice of the need for FMLA leave. *Chappell*, 675 F.3d at 1116; *Rynders*, 650 F.3d at 1196 ("'A claim [of interference] under the FMLA cannot succeed unless the plaintiff can show that he gave his employer adequate and timely notice of his need for leave. . . .'" (quoting *Woods*, 409 F.3d at 991, and also citing *Scobey v. Nucor Steel–Ark.*, 580 F.3d 781, 789–90 (8th Cir. 2009)). "Adequate notice requires 'enough information to put the employer on notice that the employee may need FMLA leave.'" *Id.* (quoting *Rynders*, 650 F.3d at 1196, in turn quoting *Thorson*, 205 F.3d at 381); *Rynders*, 650 F.3d at 1196. As the Eighth Circuit Court of Appeals has explained,

> The employee "need not invoke the FMLA by name in order to put an employer on notice." [*Thorson*, 205 F.3d at 381]. "Our cases instruct that the adequacy of an employee's notice requires consideration of the totality of the circumstances and is typically a jury question." *Murphy v. FedEx Nat'l LTL, Inc.*, 618 F.3d 893, 903 (8th Cir.2010) (citation omitted).

*Rynders*, 650 F.3d at 1196. Not every routine visit to a doctor constitutes notice to an employer of a potential serious health condition, but knowledge of a "non-routine" visit related to a prior condition that indicated a need for additional time off covered by the FMLA may be sufficient to satisfy the notice requirement. *Phillips*, 547 F.3d at 910-11. "An employer may require that a request for leave is supported by certification

from a health care provider." *Chappell*, 675 F.3d at 1116 (citing 29 U.S.C. § 2613(a)).

Although no showing of an employer's "intent" is required, an "interference" claim is not a "strict liability" claim; rather, "an employer is not liable for interference if its adverse decision was unrelated to the employee's use of FMLA leave." *See Lovland*, 674 F.3d at 811; *accord Ballato*, 676 F.3d at 772 ("If there exists a showing of interference, the burden shifts to the employer to prove that there was a reason unrelated to the employee's exercise of FMLA rights for terminating the employee."). This is so, because "'[a]n employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave.'" *Ballato*, 676 F.3d at 772 (quoting *Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010)). For example, "[a] company may take action against an employee for violating the company call-in policy when the employee is on FMLA leave." *Chappell*, 675 F.3d at 1115. Thus, there is no "interference" with FMLA rights, if the negative consequences would attach to any absence, not just to absences covered under the FMLA. *Id.*

## ii.   *Johnson's "interference" claims*

Among the violations of the FMLA that Johnson alleges, there are two that can reasonably be read to assert "interference" claims:  (1) his claim that the defendants failed to give appropriate notices as to FMLA rights, and (2) his claim that the defendants failed to grant him his FMLA leave. *See* Amended Complaint, **Count IV**, ¶ 55(a)-(b) (specifying violations of the FMLA). These claims can reasonably be read to allege "'manipulation by a covered employer to avoid responsibilities under [the] FMLA,'" *Chappell*, 675 F.3d at 1115 (quoting *Stallings*, 447 F.3d at 1050), and "den[ial] . . . with his substantive rights under the FMLA," *id.* at 1115 (quotation

marks and citations omitted)), respectively. I will consider these "interference" claims in turn.

Johnson does not assert that genuine issues of material fact preclude summary judgment on the first "interference" claim, nor could he, where he now admits that he received an employee handbook outlining Dollar General's FMLA policy, received additional training on that policy, and was aware of posters in his store that addressed FMLA policies and issues, and actually used appropriate means under Dollar General's FMLA policy to notify Dollar General of his need for medical leave after his heart attack in November 2008. *See* FED. R. CIV. P. 56(c) (summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law"); *Woods*, 409 F.3d at 990 ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see also* FED. R. CIV. P. 56(e) (the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial"); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik*, 47 F.3d at 957)). Therefore, the defendants are entitled to summary judgment on this claim.

Johnson's second "interference" claim, alleging failure to grant Johnson his FMLA leave, requires more analysis. As the defendants assert, however, this claim founders on Johnson's inability to generate any genuine issues of material fact that his absence at the end of April 2009 was for a "serious health condition." *Rynders*, 650

F.3d at 1195 (FMLA benefits are contingent upon the employee having "a serious health condition that makes [him] unable to perform the functions of [his] position."); *Throneberry*, 403 F.3d at 975 n.2 (identifying the elements of an "interference" claim as including proof that the conditions from which the plaintiff suffered were "serious health conditions"); *Rankin*, 246 F.3d at 1147 ("Where absences are not attributable to a 'serious health condition,' however, [the] FMLA is not implicated and does not protect an employee against disciplinary action based upon such absences.").

Johnson asserts that his "serious medical condition" was "severe coronary artery disease," but he never asserts that he suffered from a "serious medical condition" on the basis of a "chronic condition," as defined in 29 C.F.R. § 825.115(c); a "permanent or long-term condition," as defined by 29 C.F.R. § 825.115(d); or a "condition requiring multiple treatments," as defined by 29 C.F.R. § 825.115(e). *See also Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 472-73 (8th Cir. 2007) (discussing whether depression was a "serious medical condition" under the "chronic condition" regulation, then 29 C.F.R. § 825.114(a)(2)(i)). There is no showing here that there was any agreement with Dollar General for Johnson to take leave for his severe coronary artery disease on an intermittent basis. *See Ballato*, 675 F.3d at 772 (citing 29 U.S.C. § 2612(b)(1)). Even if Johnson suffered from coronary artery disease, not every routine visit Johnson made to a doctor nor every absence he took from work was an absence for a "serious health condition," *cf. Phillips*, 547 F.3d at 910-11, if there is no showing that, at the time of the absence, it was coronary artery disease that made Johnson unable to perform his job. *See Ballato*, 676 F.3d at 772 (leave is required if the employee's condition is both "a serious health condition" and it "makes them unable to perform the functions of their position" (citing 29 U.S.C. § 2612(a)(1)(D))).

Furthermore, even assuming that Johnson's absence beginning April 30, 2009, was because of coronary artery disease—a proposition for which there is scant evidence

in the record, consisting only of the suggestion in the notes from Johnson's call to his doctor's office on May 1, 2009, that his "flu-like symptoms" were similar to those he suffered at the time of his heart attack in November 2008—Johnson does not assert, and there is no indication in the record, that this absence required "inpatient care." *See Rynders*, 650 F.3d at 1195-96 (explaining that a serious health condition "'means an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider.'" (quoting 29 U.S.C. § 2611(11)). Neither a trip to the emergency room nor an in-person visit with the on-call doctor—both of which Johnson's doctor's medical assistant urged when Johnson called his doctor's office on May 1, 2009—would have constituted "inpatient care," and Johnson refused either kind of treatment.

Johnson also cannot generate a genuine issue of material fact that the absence that began on April 30, 2009, required "continuing treatment." *Id.* Applying the "objective test" for "continuing treatment," even assuming that Johnson was "incapacitated" by his illness for more than three days, from April 30, 2009, until May 6, 2009, there is no evidence *at all* that he "received 'continuing treatment by . . . a health care provider' within the period." *Rankin*, 246 F.3d at 1147-49 (quoting *Thorson*, 205 F.3d at 377, and citing former 29 C.F.R. § 825.114(a), now 29 C.F.R. § 825.115(a))); *see also Woods*, 409 F.3d at 990. Although the record shows that Johnson *contacted* his doctor's office on May 1, 2009, there is no evidence that he had any "in-person visit to a health care provider . . . within seven days of the first day of incapacity," on April 30, 2009. 29 C.F.R. § 825.115(a)(3). Again, Johnson's assertion that the medical assistant he spoke with on May 1, 2009, urged him to go to the emergency room or to see the on-call doctor at his doctor's office does not substitute for actually receiving "in-person" treatment, at least where Johnson refused

such treatment and was not precluded from taking advantage of it by some insuperable bar not of his own making.

Because Johnson cannot generate a genuine issue of material fact that he actually suffered from a "serious health condition" that caused him to miss work from April 30, 2009, through May 6, 2009, his "interference" claim based on denial of FMLA leave for that absence fails as a matter of law.   The defendants are entitled to summary judgment on this FMLA "interference" claim.

### c.      FMLA "retaliation" claim

Johnson also asserts an FMLA "retaliation" claim or claims based on retaliation for exercising or attempting to exercise FMLA rights.   Johnson's FMLA "retaliation" claim or claims are more hotly contested than his "interference" claims.

### i.      Nature and proof

As the Eighth Circuit Court of Appeals has noted, § 2615(a)(1) and (a)(2) "do not explicitly prohibit retaliation against an employee for exercising FMLA rights." *Lovland*, 674 F.3d at 810.   Nevertheless, the Eighth Circuit Court of Appeals, like other courts, has uniformly held that § 2615(a) prohibits "retaliation" for exercising FMLA rights, as well as "interference" with the exercise of such rights.   *See, e.g., Ballato*, 676 F.3d at 772; *Chappell*, 675 F.3d at 1115 ("An employee can make two types of FMLA claims," identified as "interference" and "retaliaton"); *Lovland*, 674 F.3d at 810-11 (noting that "this court, like our sister circuits, has consistently held that the statute prohibits retaliation against an employee who exercises her FMLA rights"); *Sisk*, 669 F.3d at 899 ("The FMLA authorizes two types of claims:   interference or retaliation.").   Thus, applying the so-called "*Stallings* dichotomy," the Eighth Circuit Court of Appeals has explained, "In an interference claim 'the employee alleges that an employer denied or interfered with his substantive rights under the FMLA,' [but] in a retaliation claim 'the employee alleges that the employer discriminated against him for

exercising his FMLA rights.'" *Chappell*, 675 F.3d at 1115 (quoting *Phillips*, 547 F.3d at 909, in turn quoting *Stallings*, 447 F.3d at 1050).

Although the Eighth Circuit Court of Appeals has uniformly recognized such a retaliation claim, it has not uniformly identified the statutory basis for it.  For example, in *Lovland*, the court stated, "[O]ur cases have classified claims of retaliation for the exercise of FMLA rights as arising under the 'discrimination' prohibition of § 2615(a)(2); we have limited 'interference' claims under § 2615(a)(1) to situations where the employee proves that the employer denied a benefit to which she was entitled under the FMLA. . . ."  *Lovland*, 675 F.3d at 811.  On the other hand, the court in *Lovland* also acknowledged that a concurring opinion in one of its decisions had asserted that treating a claim of retaliation for exercising FMLA rights as a claim "'under § 2615(a)(1)'" was "'more appropriate . . . than invoking the opposition clause of § 2615(a)(2)," and that "[s]ome later opinions have expressed support for this view, without abandoning the *Stallings* dichotomy."  *Id*. (citing Judge Colloton's concurrence in *Phillips*, 547 F.3d at 915, and opinions in *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 754 n.7 (8th Cir. 2011), and *Scobey*, 580 F.3d at 790 n.9).  The court in *Lovland* also recognized that "in January 2009, the Department of Labor amended the first sentence of 29 C.F.R. § 825.220(c) to state, "'The Act's prohibition against "interference" prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights,' describing this as a 'clarification [that] will have no impact on employers or workers.'"  *Id*. (quoting 73 Fed.Reg. 67934, 68055 (Nov. 17, 2008)).

In *Scobey*, 580 F.3d 781, the Eighth Circuit Court of Appeals explained succinctly why § 2615(a)(1) is a more logical statutory basis than § 2615(a)(2) for a claim of retaliation for exercising FMLA rights.  In that case, the plaintiff's "interference" claim was based on a demotion for four unexcused absences in a four-

day period, and his "retaliation" claim was based on a demotion for using paid leave to obtain treatment for his alcoholism and depression, for which his four unexcused absences were merely a pretext for retaliation. *Id.* at 790. The court explained:

> The obvious similarity between Scobey's "interference" and "retaliation" claims calls into question our case law articulating the two claims available under the FMLA. *See, e.g., Phillips*, 547 F.3d at 909. An interference claim that an employee suffered an adverse employment action because he or she took leave protected by the FMLA is difficult to distinguish from a retaliation claim that an employer discriminated against such an employee for exercising his or her FMLA rights. 29 U.S.C. § 2615(a)(1) states that "[i]t shall be unlawful for any employer *to interfere with*, restrain, or deny *the exercise of or the attempt to exercise*, any right provided under [the FMLA]." (emphasis added). The FMLA also provides an additional cause of action against employers who "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). This prohibits retaliation of a sort, but not retaliation for an employee's exercise of his or her FMLA rights. Under the statute, retaliation for exercising one's FMLA rights appears to be just one aspect of what is meant by "interference," not a separate claim. *See Phillips*, 547 F.3d at 913-15 (Colloton, J., concurring).

*Scobey*, 580 F.3d at 790 n.9.

I agree with *Scobey* and the other opinions suggesting that the statutory basis for a claim of retaliation for exercising or attempting to exercise FMLA rights lies in § 2615(a)(1), rather than § 2615(a)(2). While the plain language of § 2615(a)(1) would reasonably encompass a claim of retaliation for exercising FMLA rights as a form of "interference," the language of § 2615(a)(2) cannot be strained so far as to authorize a claim of retaliation for exercising FMLA rights without attributing a remarkably odd meaning to "opposition." *Id.* While the plain language of § 2615(a)(2) does prohibit

retaliation "of a sort"—retaliation for "opposing any practice made unlawful by this subchapter"—it does not prohibit retaliation for an employee's exercise of his or her FMLA rights. *Scobey*, 580 F.3d at 790 n.9. Similarly, § 2615(b) prohibits retaliation "of a sort"—retaliation for asserting a claim of a *violation* of the FMLA or participating in an inquiry or proceeding on such a claim—but it also does not prohibit retaliation for an employee's exercise of his or her FMLA rights to leave.

Indeed, it has been clear since January 2009, before Johnson allegedly suffered retaliation for exercising his FMLA rights, that governing regulations place the prohibition on retaliation for exercising FMLA rights within the statutory prohibition on "interference." *Lovland*, 674 F.3d at 811 (citing 73 Fed.Reg. 67934, 68055 (Nov. 17, 2008), for this amendment to 29 C.F.R. § 825.220(c)). Since 2009, 29 C.F.R. § 825.220(c) has provided as follows:

> (c) The Act's prohibition against "interference" prohibits an employer from discriminating *or retaliating* against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies. See § 825.215.

29 C.F.R. § 825.220(c) (emphasis added). The Eighth Circuit Court of Appeals has recognized that Department of Labor regulations under the FMLA are generally entitled to deference, even though the court remains the final authority in matters of statutory interpretation and "'must reject administrative constructions which are contrary to clear congressional intent.'" *Ragsdale v. Wolverine Worldwide, Inc.*, 218 F.3d 933, 936 (8th Cir. 2000) (quoting *Chevron USA, Inc. v. Natural Resources Defense Council,*

*Inc.*, 467 U.S. 837, 843 n.9 (1984)).  Although the court in *Ragsdale* struck down certain FMLA regulations, the Eighth Circuit Court of Appeals has never considered the validity of 29 C.F.R. § 825.220(c) as amended in 2009.  The Sixth Circuit Court of Appeals has expressly concluded that § 825.220(c), as amended, "is a reasonable interpretation of the FMLA entitled to deferential judicial review." *Hunter v. Valley View Local Schools*, 579 F.3d 688, 692 (6th Cir. 2009) (considering the version of the regulation as amended in 2009).  I agree.

Ultimately, however, it is not the statutory or regulatory basis for an FMLA retaliation claim that is critical, but how Eighth Circuit case law has defined the claim and what is required to prove it.  *See Lovland*, 674 F.3d at 812.  As the Eighth Circuit Court of Appeals explained, "numerous recent Eighth Circuit decisions have adhered to the *Stallings* interference/retaliation dichotomy, including decisions after the promulgation of revised § 825.220(c) in January 2009." *Id.*  Thus, under Eighth Circuit law, the gravamen of an FMLA "retaliation" claim (as distinguished from an "interference" claim, involving denial of or interference with FMLA rights) is that the employer discriminated against the employee for taking FMLA leave.  *Id.* at 811-12. Another critical distinction between an "interference" claim and a "retaliation" claim is that, "when the employee asserts a § 2615(a)(1) [interference] claim that a right prescribed by the FMLA has been denied, we have held that the employer's intent in denying the benefit is immaterial; by contrast, a retaliation claim . . . requires proof of an impermissible discriminatory animus, typically with evidence analyzed under the *McDonnell Douglas* burden-shifting framework at the summary judgment stage." *Lovland*, 674 F.3d at 811 (footnote omitted) (citing *Stallings*, 447 F.3d at 1050–51, and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973)); *Chappell*, 675 F.3d at 1116-17.

More specifically,

Absent direct evidence, [the employee's] FMLA retaliation claims are evaluated under the *McDonnell Douglas* burden-shifting framework. *Wierman [v. Casey's General Stores]*, 638 F.3d [984,] 999 [(8th Cir. 2011)] (citing *Phillips*, 547 F.3d at 912). To establish a prima facie case, [the employee] must show that 1) he engaged in protected conduct; 2) he suffered a materially adverse employment action; and 3) the materially adverse action was causally linked to the protected conduct. *Id.* If [the employee] establishes a prima facie case, the burden shifts to [the employer] to "promulgate a non-discriminatory, legitimate justification for its conduct," and then back to [the employee] to "either introduce evidence to rebut the employer's justification as a pretext for discrimination, or introduce additional evidence proving actual discrimination." *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2001) (citations omitted).

*Chappell*, 675 F.3d at 1116-17; *Sisk*, 669 F.3d at 899 (also citing *Wierman*, 638 F.3d at 999).

Dollar General asserts that an employee cannot assert a claim for retaliation for exercising FMLA rights unless the employee was actually entitled to FMLA leave, *i.e.*, actually suffered from a "serious health condition." Three Circuit Courts of Appeals, the Fifth, Sixth, and Eleventh, have embraced this position, albeit some of them only in unpublished decisions. *See, e.g, Sosa v. Coastal Corp.*, 55 Fed.Appx. 716 (5th Cir. 2002) (unpublished op.) (holding that, to satisfy the "protected activity" element of a prima facie case of FMLA retaliation, the plaintiff "must show that she suffered from a serious health condition that made her unable to perform the functions of her position"); *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 Fed.Appx. 330, 338 (6th Cir. 2009) (unpublished op.) (holding that, because the plaintiff's leave was not on account of a serious health condition, he could not establish the "protected activity" element of his FMLA retaliation claim); *Walker v. Elmore County Bd. of Educ.*, 379

F.3d 1249, 1253 (11th Cir. 2004) (rejecting the plaintiff's "fallback" argument "that the FMLA protects a request for FMLA leave regardless of whether the employee would be eligible for the leave, which was based on the district court's holding "that the FMLA 'can protect someone who mistakenly asks for FMLA leave although they are ineligible,'" because the appellate court concluded that "[t]he FMLA makes it unlawful for an employer to interfere with the attempt 'to exercise[] any right *provided under this subchapter*,' and the right to leave is provided only to eligible employees," and holding "that the statute does not protect an attempt to exercise a right that is not provided by the FMLA, *i.e.*, the right to leave before one becomes eligible therefor." (emphasis in the original));[4] *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003) ("Interference and retaliation claims both require the employee to establish a serious health condition."); *Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) (holding that the plaintiff could not establish the "protected activity" of her FMLA retaliation claim, because she did not have a serious health condition).

---

[4] In *Walker*, the court also rejected the plaintiff's retaliation claim based on her argument that requesting leave for which she would be eligible before she was actually eligible was an "attempt to exercise" a right provided by the FMLA, and that employers are prohibited from retaliating against an employee for making such a request. 379 F.3d at 1353. The court reasoned that the plaintiff's case would fail, unless the court agreed that the FMLA protects a request for leave that is to begin after the employee achieves eligibility, but concluding that the plaintiff's case was "*not* one 'where the employee, before she becomes eligible for FMLA [leave], is putting the employer on notice of her intent to take FMLA leave *after* she becomes eligible for FMLA coverage,'" as the district court had characterized it, but one where the plaintiff would not have been eligible for leave even at the time her leave was to begin. *Id.* (emphasis in the original). The court concluded, "There can be no doubt that the request—made by an ineligible employee for leave that would begin when she would still have been ineligible—is not protected by the FMLA," but it left "for another day the question of whether the FMLA protects a pre-eligibility request for post-eligibility maternity leave." *Id.*

The Tenth Circuit Court of Appeals provided a more thorough explanation of the rationales for both sides of the issue in *Wilkins v. Packerware Corp.*, 260 Fed.Appx. 98 (10th Cir. 2008) (unpublished op.).  In *Wilkins*, the plaintiff contended that he should not have been required to prove his eligibility for FMLA leave in order to pursue his FMLA retaliation claim, because "an employee engages in 'protected activity' for purposes of an FMLA retaliation claim whenever he or she *asserts* an FMLA right, even if it later emerges that the employee is *not actually eligible* for leave." 260 Fed.Appx. at 103 (emphasis in the original).  The court observed, "[F]ar from being an obvious or evident point of law, the legal position [the plaintiff] advance[d] appears to implicate what is very much an open question in this circuit." *Id.*  The court then considered the reasons supporting and undermining the plaintiff's argument:

> On the one hand, in a somewhat analogous context we have held the law to be as Mr. Wilkins proposes—namely, that "in order to prosecute an [Americans with Disabilities Act] retaliation claim, a plaintiff need not show that she suffers from an actual disability.  Instead, a reasonable, good faith belief that the statute has been violated suffices." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001).  And such an approach might be argued to make sense in the FMLA context as well.  If, for example, an employee took time off to care for an ailing spouse, 29 U.S.C. § 2612(a)(1)(C), only to discover that the spouse had been misdiagnosed and did not suffer from a serious health condition, it would arguably serve to defeat the purpose of the statute to allow the employer to fire the employee on the basis of a doctor's misdiagnosis.
>
> On the other hand, it is not unlawful under the FMLA for an employer to fire an employee for requesting or taking leave for purposes other than those described by the Act.  The FMLA protects an employee's leave only (A) for the birth of, and to care for, a child, (B) for the adoption or assumption of foster care of a child, (C) to care for an

immediate family member suffering from a serious health condition, or (D) for the employee's own serious health condition, which makes it impossible for him or her to work. 29 U.S.C. § 2612(a)(1). And this leave is limited to "eligible employees," who have worked for the employer for at least 12 months and have worked at least 1,250 hours in those 12 months. *Id.* § 2611(2)(A). An employee thus cannot claim protection under the Act merely by asserting that he or she wishes to take FMLA leave, and then, say, be free to vacation in Hawaii, without fear of adverse consequences. Our precedent may also be read to prefigure the conclusion that the lawful taking of FMLA leave is a prerequisite to a retaliation claim, *see Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir.2007) ("a retaliation claim may be brought when the employee *successfully took FMLA leave* . . . ") (emphasis added), as might the decision of at least one of our sister circuits, *see Walker v. Elmore County Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004) (rejecting the argument that the "FMLA protects a request for FMLA leave regardless of whether the employee would be eligible for the leave," and expressly holding that "the statute does not protect an attempt to exercise a right that is not provided by FMLA").

*Wilkins*, 260 Fed.Appx. at 103. However, because the plaintiff had not raised the issue in the district court, the Tenth Circuit Court of Appeals could only review for plain error. *Id.* The appellate court concluded that the competing arguments outlined above demonstrated that the issue was open and contestable, so that the district court's requirement that the plaintiff prove he suffered from a "serious health condition" to support a retaliation claim was not "plainly evident error." *Id.* Consequently, the court concluded that it "need not decide whether one must actually be eligible for FMLA leave to bring a claim for retaliation under the Act." *Id.*

As I explained above, I believe that § 2615(a)(1), which makes it unlawful, among other things, "to interfere with, restrain, or deny . . . the attempt to exercise

any right provided under this subchapter," is the appropriate statutory basis for an FMLA retaliation claim of the kind at issue here.  I cannot agree with the Eleventh Circuit Court of Appeals in *Walker*, 379 F.3d at 1253, that this provision requires that the attempt to exercise FMLA rights *ultimately would be successful*, absent the employer's interference.  "Attempt" itself does not necessarily carry that connotation; to the contrary, it encompasses an *unsuccessful* effort.  *See* OXFORD ENGLISH DICTIONARY (online version) (www.oed.com; last accessed June 27, 2012) (defining the noun "attempt" as "a.  A putting forth of effort to accomplish what is uncertain or difficult; a trial, essay, endeavour; effort, enterprise, undertaking," and "b. *esp*.  The effort in contrast with the attainment of its object; effort merely, futile endeavour."); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1995) (defining the noun "attempt" as "1 a:  the act or an instance of attempting; *esp*:  an unsuccessful effort").  Moreover, like the Tenth Circuit Court of Appeals, in the analogous circumstances of a claim of retaliation for requesting an accommodation of disability within the meaning of the Americans with Disabilities Act (ADA), the Eighth Circuit Court of Appeals has "held that '[a]n individual who is adjudged not to be a qualified individual with a disability may still pursue a retaliation claim under the ADA as long as [he] had a good faith belief that [a] requested accommodation was appropriate.'"  *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 907 (8th Cir. 2010) (quoting *Heisler v. Metropolitan Council*, 339 F.3d 622, 632 (8th Cir. 2003)).  Such a "good faith belief" requirement would eliminate the feared abuse of the FMLA by a plaintiff who might claim protection under the Act merely by asserting that he or she wished to take FMLA leave, and then vacationed in Hawaii, *see Wilkins*, 260 Fed.Appx. at 103, because such a plaintiff would lack the necessary "good faith belief" that he or she required FMLA leave for a "serious health condition."

Finally, a retaliation claim seeks to deter conduct involving a discriminatory animus of the *employer*, *cf. Lovland*, 674 F.3d at 811 (stating, "a retaliation claim [under the FMLA] . . . requires proof of an impermissible discriminatory animus"), and "materially adverse action" of an employer sufficient to support a retaliation claim under the FMLA means action that would dissuade *a reasonable employee*, not just the plaintiff, from exercising her rights under the FMLA, *see Quinn*, 653 F.3d at 754 n.9 (noting, "Every circuit that has addressed the issue has held that the 'materially adverse' standard for Title VII retaliation claims applies to FMLA retaliation claims" (citations omitted)).  It follows that it would arguably defeat the purpose of the statute to allow an employer to retaliate against an employee, when the employer has received "'enough information to put the employer on notice that the employee *may need* FMLA leave,'" *Chappell*, 675 F.3d at 1116 (emphasis added) (quoting *Rynders*, 650 F.3d at 1196), whether or not the employee would ultimately have qualified for such leave.  *Cf. Wilkins*, 260 Fed.Appx. at 103 (noting the argument that failure to recognize an FMLA retaliation claim where the plaintiff ultimately did not qualify for FMLA leave would not serve the purpose of the statute).  In other words, where an employer engages in conduct that would dissuade a reasonable employee from seeking FMLA leave because of the *possibility* that a particular employee may need FMLA leave, the employer has both shown the required animus and engaged in conduct of sufficient gravity to brand the employer's actions as retaliatory and in violation of the statute.

There is no doubt, under Eighth Circuit law, that "protected conduct" that would support a retaliation claim based on discrimination for exercising FMLA rights necessarily includes taking FMLA leave, when eligible, and an attempt to take FMLA leave that ultimately would have been successful.  *See Chappell*, 675 F.3d at 1116 (the plaintiff's retaliation claim alleged discrimination after he actually took FMLA leave); *Sisk*, 669 F.3d at 898 (same).  I believe that Eighth Circuit law *also* supports my view

that notice of a need for FMLA leave, made in good faith, is also "protected conduct," invoking the protections of the FMLA from retaliation for exercising or attempting to exercise FMLA rights, whether or not the employee is actually eligible for FMLA leave.

Specifically, the Eighth Circuit Court of Appeals explained in *Wierman*,

> "In order to benefit from the protections of the statute, an employee must provide [her] employer with enough information to show that [she] *may need FMLA leave*." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). However, "[a]n employee need not invoke the FMLA by name in order to put an employer on notice that the Act may have relevance to the employee's absence from work." *Thorson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000). The employer's duties arise "when the employee provides enough information to put the employer on notice that the employee *may be in need of FMLA leave*." *Id.* (internal quotation marks omitted).

*Wierman*, 638 F.3d at 1000 (emphasis added). Moreover, in *Wierman*, the court appeared to treat the employee's notice of a need for FMLA leave as "protected conduct," that is, as the exercise of FMLA rights, because the employer could not use its termination of the employee before the deadline for submission of FMLA paperwork to argue that the employee never exercised her FMLA rights. *Id.* (citing *Phillips*, 547 F.3d at 910, as rejecting an argument that an employee's termination before FMLA certification means that she never exercised her FMLA rights, where the employee's FMLA status was in flux at the time of termination, and *Caldwell v. Holland of Texas, Inc.*, 208 F.3d 671, 677 (8th Cir. 2000), as stating, "An employer does not avoid liability by discharging an employee who takes leave in order to seek treatment for a condition that is later held to be covered by the FMLA."). The court also held that there was a causal connection between the plaintiff's protected activity and the

challenged action, because the employer "terminated [the plaintiff] within a week, in part due to absences *that may have been covered by the FMLA*." *Id.* (emphasis added).

In short, a "retaliation" claim does not require proof that the plaintiff actually suffered a "serious health condition," only that the plaintiff gave adequate and timely notice to the employer that he or she needed leave for a condition that the plaintiff believed, in good faith, might be covered by the FMLA.

### ii. *Johnson's "retaliation" claim*

In addition to the FMLA claims that I classified as "interference" claims, above, Johnson asserts FMLA claims based on "retaliating" against him for having exercised his FMLA rights; "discriminating" against him for having utilized his FMLA rights; and using "a pretext . . . solely to justify terminating him." Amended Complaint, **Count IV**, ¶ 55(c)-(e). These claims appear to be FMLA "retaliation" claims under the "*Stallings* dichotomy," because they appear to be claims that "'[Dollar General] discriminated against [Johnson] for exercising his FMLA rights.'" *Chappell*, 675 F.3d at 1115 (quoting *Phillips*, 547 F.3d at 909, in turn quoting *Stallings*, 447 F.3d at 1050). Indeed, as I read the Amended Complaint and the summary judgment record, Johnson's basis for both the "retaliation" and "discrimination" claims in **Count IV** is terminating him for his absence beginning April 30, 2009. At least in the context of this case, I see nothing but a semantic difference between these claims. I also see no distinction between a claim that the defendants "retaliated" against Johnson for exercising his FMLA rights and a claim that the defendants used "a pretext . . . solely to justify terminating him." Rather, using a "pretext" is only actionable *in the context of a "retaliation" claim*, because a pretextual reason for adverse employment action undercuts an employer's proffered legitimate reason for allegedly retaliatory action. *See id.* at 1116-17 (if an employer "promulgate[s] a non-discriminatory, legitimate justification for its conduct," the plaintiff must "either introduce evidence to rebut the

employer's justification as a pretext for discrimination, or introduce additional evidence proving actual discrimination" (internal quotation marks and citations omitted)).  Thus, I conclude that Johnson is actually asserting only a single FMLA retaliation claim based on his allegations that he was terminated for exercising his FMLA rights for his absence beginning April 30, 2009.

Contrary to the defendants' contentions, Johnson's FMLA "retaliation" claim does not fail for the same reason that his FMLA "interference" claims fail, failure to generate a genuine issue of material fact that his April 30, 2009, absence was because of a "serious health condition."   For the reasons explained above, Johnson is not required to prove that he suffered from a "serious health condition" as an element of his "retaliation" claim; rather, to generate a prima facie case of FMLA retaliation, he is required to prove (or for purposes of summary judgment, generate genuine issues of material fact) that he gave notice to Dollar General that he needed leave for a condition that he believed, in good faith, might be covered by the FMLA, and suffered adverse employment action causally connected to that notice.  *Cf. Chappell*, 675 F.3d at 1116-17 (stating the elements of a prima facie case of FMLA retaliation).  If Dollar General then promulgated a non-discriminatory (*i.e.*, non-retaliatory), legitimate justification for its conduct, Johnson would have to generate genuine issues of material fact that Dollar General's justification was a pretext for retaliation or generate genuine issues of material fact that Dollar General actually retaliated, *cf. id.*, keeping in mind that an FMLA "retaliation claim . . . requires proof of an impermissible discriminatory animus." *Lovland*, 674 F.3d at 811   The question is, has Johnson generated the necessary genuine issues of material fact?

If the relevant questions were solely what the employer knew from the employee's notice and how the employer responded, I would conclude that Johnson had generated the necessary genuine issues of material fact to defeat the defendants'

summary judgment motion as to this claim and allow this claim to go to the jury. The record shows that what Williams (and, hence, Dollar General) knew about the April 30, 2009, absence was from a voicemail that Johnson left Williams on May 1, 2009, stating that Johnson had been to the doctor owing to chest pains and that the doctor had told him to stay home over the weekend to get some rest. A reasonable jury could find that Johnson gave adequate and timely notice of his need for FMLA leave in this voicemail, that is, enough information to put Dollar General on notice that Johnson might need FMLA leave. *Chappell*, 675 F.3d at 1116; *see also Rynders*, 650 F.3d at 1196 (noting that whether or not notice is adequate requires consideration of the totality of the circumstances and is typically a jury question). Although the voicemail did not invoke the FMLA, it did not have to for Johnson to provide the required notice. *Rynders*, 650 F.3d at 1196. Moreover, the voicemail did not give notice of a "routine" doctor visit, and the specific identification of the symptoms as "chest pains" was sufficient to suggest to a reasonable person that the visit might relate to Johnson's prior heart attack. Thus, the doctor's purported instruction that Johnson needed to take time off because of those chest pains was sufficient to indicate a need for additional time off covered by the FMLA. *Phillips*, 547 F.3d at 910-11. To put it another way, based on what the defendants knew, there are genuine issues of material fact that Johnson gave notice that he needed time off for a "serious health condition," because he indicated that he had had an in-person treatment by a health care provider and would be incapacitated for more than three days because of symptoms consistent with a heart attack or coronary artery disease. *See* 29 C.F.R. § 825.115(a); *Rankin*, 246 F.3d at 1147-49; *Thorson*, 205 F.3d at 377.

That is not the end of the matter, however, because I have also postulated, above, that, *the employee* must also have had a good faith belief that he was seeking leave covered by the FMLA to engage in "protected activity." Johnson cannot generate

a genuine issue of material fact on this requirement where he knew (a) that he had not actually had any in-person treatment by a health care provider; (b) that he had not even complained that he was suffering from "chest pains" when he spoke to the doctor's medical assistant in his phone call; and (c) that no health care provider had directed him to take time off to rest as treatment for his "chest pains" or the symptoms that he had actually reported to the medical assistant.  Johnson has not, and does not now, assert that he actually had an in-person treatment with a health care provider for the condition that caused his absence beginning April 30, 2009, nor has he ever contended that he was not misrepresenting either his symptoms or the medical assistant's suggestions in his voicemail to Williams.  Indeed, Johnson cannot generate a genuine issue of material fact that he had a good faith belief that he was actually suffering symptoms related to his coronary artery disease, where he does not dispute the medical assistant's record of his call as indicating that he insisted that he was not suffering a heart attack, but symptoms caused by his exposure to the flu from contact with his co-workers and significant other.

Thus, the defendants are entitled to summary judgment on Johnson's FMLA retaliation claim, because Johnson has failed to generate genuine issues of material fact on the first element of his prima facie case, which requires him to show that he engaged in "protected activity."  *See Chappell*, 675 F.3d at 1116-17.[5]

---

[5] Although Johnson's FMLA claims were the only ones on which federal jurisdiction was based, none of the parties have suggested that, if the defendants are entitled to summary judgment on those claims, I should decline to exercise jurisdiction over Johnson's state-law claims pursuant to 28 U.S.C. § 1367(c)(3).  Because proceedings are well advanced in this court and trial is set to begin relatively soon, on September 24, 2012, I will not *sua sponte* decline to exercise jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(c)(3).

### C.    *Johnson's Workers Compensation Retaliation Claim*

The defendants also seek summary judgment on Johnson's claim alleging retaliation for processing workers compensation claims, in **Count II** of his Amended Complaint.   That claim alleges that Johnson was pursuing workers compensation claims with the defendants at the time of his termination, that he was willfully terminated in the midst of a dispute concerning the workers compensation claims and his medical condition at the time of termination, and that he was terminated, in part, owing to the making and pursuing of workers compensation claims.   Johnson denies that the defendants are entitled to summary judgment on this claim.

### 1.    *Arguments of the parties*

In support of this part of their Motion For Summary Judgment, the defendants assert that Johnson simply has no evidence of "retaliation" for filing a workers compensation claim.   The defendants argue that Johnson cannot show that he engaged in any "protected activity" during the time when he was absent from work in late April and early May of 2009, he simply "assumes" that his voicemail report of "chest pains" might possibly have led Williams to believe that he potentially had a workers compensation claim.   Thus, the defendants assert that Johnson has nothing more than speculation to support this claim, because he never actually filed a workers compensation claim or even asserted any intention to file a workers compensation claim in connection with that absence, and the defendants had no reason to believe that he intended to do so.   The defendants also argue that Johnson's "resignation" was not a retaliatory "termination" under Iowa law, because the mere threat of termination—if Williams even made such a threat in his various voicemails during Johnson's final absence—is not actionable as a discharge in violation of public policy.   The defendants point out that, to the extent that Johnson relies on the defendants' failure to give him extra payroll to return his store to "model store" status after his leave for his November

2008 heart attack, Johnson concedes that he never made a request for additional payroll. Finally, the defendants assert that, in the absence of any adverse employment action or protected activity, there is no "causal connection" to any workers compensation claim. They also point to undisputed evidence that Williams did not even know that Johnson was claiming workers compensation benefits for his heart attack in 2008. As to Johnson's claim against Williams, the defendants also argue that Iowa law does not impose liability on supervisors in their individual capacities for workers compensation retaliation claims.

In response, Johnson argues that he did engage in protected activity, because he did take time off for workers compensation injuries in 2008, that he was "constructively discharged" in May 2009, and that Williams's response to his final absence indicates the causal connection between his workers compensation absences and his constructive discharge. More specifically, Johnson argues that he sought workers compensation benefits for his October 17, 2008, knee injury, that the record shows that Williams was aware of that workers compensation claim, and that Johnson missed work again for his heart attack from November 18, 2008, through December of 2008. Johnson argues that a reasonable jury could find that Williams's voicemails during his absence beginning April 30, 2009, demonstrate that he was constructively discharged on May 6, 2009. He also argues that there is sufficient evidence for a reasonable jury to find the necessary causal connection, because the evidence shows that Williams was upset on May 1, 2009, about Johnson's request for more time off, because Williams was tired of running Johnson's store. Johnson argues that Williams would not have been that upset just over five days off for which Johnson indicated he would use vacation time, so the inference is that prior absences were the tipping point for his termination. In response to Williams's separate argument for summary judgment on this claim, Johnson asserts that the Iowa Supreme Court has held that liability for a

termination in violation of public policy can extend to individual officers of a corporation who authorized or directed the discharge of the employee for reasons that contravene public policy.

The defendants reply only to Johnson's argument concerning individual liability. They point out that Williams was not an officer or director of Dollar General (or Dolgencorp), but a district manager—that is, he was merely Johnson's supervisor.

### 2.   *Analysis*

#### a.   *Individual liability*

I will take up the last issue raised by the defendants first, whether Williams can be held individually liable for discharge of Johnson in violation of public policy.  The Iowa Supreme Court considered the question of liability of both officers and employees for such a tort in *Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 775-77 (Iowa 2009), but ultimately "only h[e]ld that liability for the tort can extend to *individual officers of a corporation* who authorized or directed the discharge of an employee for reasons that contravene public policy."  *Id.* at 777 (emphasis added).  As the defendants point out, Williams was not an officer, but a district manager.  I decline, in this instance, to extend liability for a state-law tort to someone who was merely the employee's supervisor, absent clearer indications that the Iowa Supreme Court would do so in an appropriate case.  Williams is entitled to summary judgment on this claim.

#### b.   *Proof of the claim*

Even if both Dollar General and Williams could be liable on this claim, the defendants assert that the claim fails as a matter of law on the merits.  As I have explained,

> Iowa courts have recognized a cause of action for an "employee who is discharged contrary to public policy, which includes being discharged 'due to the filing of a workers' compensation claim.'"  *Napreljac v. John Q.*

*Hammons Hotels, Inc.*, 505 F.3d 800, 802 (8th Cir. 2007) (citing *Springer [v.Weeks & Leo Co., Inc.]*, 429 N.W.2d [558,] 560 [(Iowa 1988)]). In *Napreljac*, the Eighth Circuit Court of Appeals explained:

> To recover damages, the employee must prove that he was discharged in retaliation for engaging in protected activity. The Supreme Court of Iowa has not attempted to define protected activity in this context, other than to describe it generally as "asserting statutory workers' compensation rights." *Springer v. Weeks & Leo Co., Inc.*, 475 N.W.2d at 633.

> *Id.* This court has previously stated the elements of a prima facie case of retaliatory discharge in violation of public policy as the following: "(1) the plaintiff engaged in protected activity; (2) the plaintiff suffered adverse employment action; and (3) the circumstances give rise to an inference that the plaintiff's discharge was causally related to her protected activity." *Raymond v. U.S.A. Healthcare Center-Fort Dodge, L.L.C.*, 468 F. Supp. 2d 1047, 1058-9 (N.D. Iowa 2006) (citing *Fitzgerald v. Salsbury Chemical, Inc.*, 613 N.W.2d 275, 281 (Iowa 2000); *Teachout v. Forest City Community School Dist.*, 584 N.W.2d 296, 299 (Iowa 1998); and *Lloyd v. Drake University*, 686 N.W.2d 225, 228 (Iowa 2004)).

*Beekman v. Nestle Purina Petcare Co.*, 635 F. Supp. 2d 893, 921 (N.D. Iowa 2009).

There is no hint in the record that Johnson's absence beginning April 30, 2009, was, itself, protected activity, because Johnson never asserted workers compensation rights for that absence, and he does not suggest, even now, that this absence was the result of a workplace injury. *See id.* Nevertheless, I will assume, for the sake of argument, that Johnson can generate genuine issues of material fact on the first two elements of his prima facie case, because he engaged in protected activity by seeking and obtaining workers compensation benefits for his knee injury in October 2008, and

that he suffered adverse employment action, because he was "constructively discharged" by Williams in May 2009.[6] *Id.* (first two elements). This claim founders, however, as a matter of law, on the third element of Johnson's prima facie case, "causal connection." *Id.*

> As to the "causal connection" element, I noted the following in *Beekman*:
>
>> The Iowa Supreme Court has explained the causation standard:
>>
>>> The causation standard in a common-law retaliatory discharge case is high. [*Hulme v. Barrett*, 480 N.W.2d 40, 42 (Iowa 1992)] (discussing statutory

_____

[6] I have considerable doubt that Johnson could prove a constructive discharge, because the Iowa Supreme Court has held that merely threatening an employee with termination does not give rise to a claim at common law, such as a claim for discharge in violation of public policy for asserting workers compensation claims. *See Below v. Skarr*, 569 N.W.2d 510, 512 (Iowa 1997). Johnson's assertion of a constructive discharge appears to rely, in large part if not entirely, on his allegation that Williams told him in a voicemail on May 5, 2009, that he needed to call him back within 30 minutes, or he would be terminated. However, as the defendants point out, there is no indication that Williams ever acted on that threat to terminate Johnson. Furthermore, as the defendants point out, the Iowa Supreme Court has observed that "conditions will not be considered intolerable [so as to constitute a constructive discharge] unless the employer has been given a reasonable chance to resolve the problem," *see Van Meter Indus. v. Mason City Human Rights Comm'n*, 675 N.W.2d 503, 511 (Iowa 2004), and Johnson gave Dollar General and Williams no such opportunity before resigning. Because a mere threat of termination is not enough to sustain a claim for wrongful discharge, *see Below*, 569 N.W.2d at 512, I doubt that Johnson could generate a genuine issue of material fact that such a threat led him to the reasonable belief that there was no possibility that Dollar General would respond fairly, if he gave Dollar General or Williams the chance to resolve the problem, particularly where Dollar General had granted workers compensation benefits for Johnson's October 2008 knee injury, apparently without raising any difficulties. *See Van meter Indus.*, 675 N.W.2d at 511 (the employee must give the employer a chance to resolve the problem unless he or she reasonably believes that there is no possibility that the employer will respond fairly, and the fact finder must use an objective standard to determine whether there has been a constructive discharge).

> retaliatory discharge claim). The employee's engagement in protected conduct must be the determinative factor in the employer's decision to take adverse action against the employee. *See Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 686 (Iowa 1990); *Graves v. O'Hara*, 576 N.W.2d 625, 628 (Iowa App. 1998). A factor is determinative if it is the reason that "tips the scales decisively one way or the other," even if it is not the predominant reason behind the employer's decision. *See Smith*, 464 N.W.2d at 686.

> *Teachout v. Forest City Community School Dist.*, 584 N.W.2d 296, 301-302 (Iowa 1998). This court has explained, however, that, "[w]hile the causation standard is high, it generally 'presents a question of fact . . . . Thus, if there is a dispute over the conduct or the reasonable inferences to be drawn from the conduct, the jury must resolve the dispute.'" *Brown v. Farmland Foods, Inc.*, 178 F. Supp. 2d 961, 981 (N.D. Iowa 2001) (citing *Fitzgerald*, 613 N.W.2d at 289) (in turn citing 2 Henry H. Perrit, Jr., Employee Dismissal Law and Practice § 7.21, at 54 (4th ed. 1998)). Temporal proximity may "be a factor weighing in favor of finding causation, [but] in the absence of other evidence, temporal proximity is 'insufficient to establish a prima facie case of retaliatory discharge.'" *Bumgarner v. Grafco Industries, LP*, 581 F. Supp. 2d 1052, 1063 (S.D. Iowa 2008) (citing *Melvin v. Car-Freshener Corp.*, 453 F.3d 1000, 1002-03 (8th Cir. 2006)).

*Beekman*, 635 F. Supp. 2d at 922.

Here, Johnson cannot even rely on "temporal proximity" as a factor to show the purported "causal connection," *see id.*, because he was not purportedly discharged until more than seven months after he took the only workers compensation leave known to Williams, leave for his knee injury in October 2008. The parties agree that Williams did not know that Johnson had claimed that his heart attack in November 2008 was a work-related injury, nor is there any indication in the record that Williams had been

told or believed that the absence beginning April 30, 2009, was for a workers compensation injury, so that Johnson cannot use those incidents to try to establish closer temporal proximity. Certainly, seven months between the October 2008 work-related knee injury and the final absence beginning in April 2009 is sufficiently long that, even if it could be reasonably described as involving "temporal proximity," such "temporal proximity" is not enough, standing alone, to establish a prima facie case of retaliatory discharge. *Id.*; *see also Berry v. Basic Materials Corp.*, 1997 WL 33558608, *5 (N.D. Iowa June 2, 1997) (slip op.) (Jarvey, Mag. J.) (considering a workers compensation retaliation claim under Iowa law and noting, "Even in jurisdictions where the temporal proximity between protected activity and adverse employment action is sufficient to create a prima facie showing of discrimination, a six-month time period separating the two acts is insufficient to create an inference of discrimination." (citing cases)). Johnson has not cited any other actions by Williams or Dollar General showing that they would not be willing to tolerate absences because of workplace injuries. *Compare id.*

Johnson also argues that Williams would not have been that upset just because he took five days off in April and May of 2009 for which he had indicated that he would use vacation time, so that the inference is that prior absences were the tipping point for his termination. However, that argument relies entirely on speculation, not reasonable inferences. Indeed, only wild speculation, not reasonable inferences, suggests that a five-day absence seven months earlier for a workers compensation injury was the factor that "tip[ped] the scales decisively one way or the other, even if it is not the predominant reason behind the employer's decision" to terminate Johnson in May 2009. *See id.* (quotation marks and citations omitted). Johnson must show a causal connection between adverse employment action and workers compensation claims or activity giving rise to a workers compensation claim, *see id.*; it is not enough to show

annoyance with some absence for which Johnson had not sought workers compensation benefits and there was no reason for the employer to believe that workers compensation benefits would likely be sought.   Here, Johnson had much longer absences for other reasons in the interim between his absence for a workplace injury in October 2008 and his absence beginning April 30, 2009, he had not sought vacation time from Williams as required by company policy for the latter absence, and he had failed to respond to Williams's voicemails about the latter absence.   This is a case in which the high causation standard and the lack of reasonable inferences that a workers compensation absence was the determining factor for any adverse action by Williams preclude a jury question on the issue.   *Id.*

The defendants are entitled to summary judgment on this claim, as well.

### D.    *Johnson's Emotional Distress Claim*

**Count II** of Johnson's Amended Complaint is a claim of intentional infliction of emotional distress, again against both defendants, alleging that the actions of the defendants were reckless, willful, and wanton, outrageous, done intentionally to cause emotional distress or were with reckless disregard of the probability of causing emotional distress, and had proximately caused Johnson severe or extreme emotional distress.   The defendants have moved for summary judgment on this claim on the ground that it is barred by the exclusive remedies provision of the Iowa Workers Compensation Act, IOWA CODE § 85.20.   In his Resistance, Johnson concedes that he does not have an intentional infliction of emotional distress claim, because of the effect of the Iowa Workers Compensation Act on a claim for emotional distress arising out of a work situation.   Therefore, the defendants are entitled to summary judgment on this claim.

### E.    Johnson's Claim For Payment Of A Bonus

Finally, in **Count III** of his Amended Complaint, Johnson asserts a claim pursuant to the Iowa Wage Payment Collection Law (IWPCL), again against both defendants, alleging that the defendants knowingly, willfully, and wantonly refused to pay, upon demand, a bonus that was rightfully earned as of May 1, 2009. The defendants seek summary judgment on this claim, as well, and Johnson denies that summary judgment is appropriate on it.

### 1.    Arguments of the parties

The defendants assert that, under the IWPCL, an employee's eligibility for a bonus is governed by the terms set forth in the parties' agreement or an employer's policy, citing IOWA CODE § 91A.2(7)(c). The defendants argue that, under its 2009 Fiscal Year Retail Incentive Plan, for a store manager such as Johnson to be eligible for payment of a quarterly bonus, the store manager had to be employed with Dollar General through the bonus calculation period and on the date of bonus payout. They assert that the bonus plan also states that the payout date for quarterly bonuses is typically within 6 weeks, but no later than 8 weeks, of the end of the financial quarter. They contend that, in the case of the disputed bonus, the quarter ended May 1, 2009, and the payout date for the quarterly bonus was June 5, 2009, well after Johnson left his employment with Dollar General.

Johnson argues that the terms of the bonus payment under Dollar General's policy violate Iowa law. He argues that the Iowa Supreme Court has recognized that a bonus constitutes wages under IOWA CODE § 91A.2(7), that IOWA CODE § 91A.3 requires an employer to pay wages earned no less than one month after they are earned, and that IOWA CODE § 91A.4 requires an employer to pay wages earned no later than the next regular payday. He argues that Dollar General's policy also notes that its eligibility requirements are subject to state law. Thus, he argues that he should have

been paid the bonus no later than a month after the end of his employment, notwithstanding the illegal eligibility requirement that he be employed on the date of payout.

In reply, the defendants argue that Johnson seeks to expand Iowa law well beyond its current limits. They argue that the statutory provisions cited by Johnson do not purport to define when a bonus is "earned" and that the Iowa Supreme Court has found that the timing provisions of the statute are inapplicable to annual bonus payments. They contend that Johnson did not fulfill the unambiguous requirements for eligibility for the quarterly bonus in question.

### 2.    Analysis

The Iowa Supreme Court has observed that the purpose of the Iowa Wage Payment Collection Law (IWPCL), IOWA CODE CH. 91A, "is to 'facilitate collection of wages by employees.'" *Runyon v. Kubota Tractor Corp.*, 653 N.W.2d 582, 585 (Iowa 2002) (quoting *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 596 (Iowa 1999)); *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 201 (Iowa 1997). "An employer must pay all wages due its employees." *Phipps*, 558 N.W.2d at 202 (citing IOWA CODE § 91A.3(1)). Furthermore, "[i]f an employer fails to pay an employee wages, the employer is subject to liability for unpaid wages or expenses, court costs, and attorney fees." *Id.* (citing IOWA CODE § 91A.8).

"A bonus meets the statutory definition of 'wages.'" *Runyon*, 653 N.W.2d at 585 (citing *Dallenbach v. Mapco Gas Prods., Inc.*, 459 N.W.2d 483, 488 (Iowa 1990)). However, there is more to the issue presented here than that. A decade ago, the Iowa Supreme Court observed,

> [I]n *Dallenbach* we suggested that a bonus cannot be "due"—as that term is used in section 91A.3(1)—until it can be accurately estimated in accordance with the parties' agreement. *Dallenbach*, 459 N.W.2d at 489. We have

> likewise held that a bonus is not "due" if an employee fails
> to meet the eligibility requirements for the pay out. *Phipps
> v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 202 (Iowa
> 1997).

*Runyon*, 653 N.W.2d at 586.

More than two decades ago, the Iowa Supreme Court rejected an argument
similar to Johnson's about the statutory requirements for payment of bonuses if they are
"wages":

> The periodic payment requirement of section 91A.3(1) does
> not modify the section 91A.2(4) [now section 91A.2(7)]
> definition of "wages." In turn, just because a given bonus is
> wages under section 91A.2(4) [now section 91A.2(7)] does
> not mean that it must be paid at least monthly; only wages
> due need be paid at least monthly. *See* Iowa Code
> § 91A.3(1). *Under Dallenbach's contract with MAPCO
> Gas, no bonus was owed unless the Des Moines district
> made a profit for the year, and even then the bonus was not
> due until February of the following year. The question of
> whether Dallenbach's bonus is wages under section 91A.2(4)
> [now section 91A.2(7)] is separate from the question of
> whether section 91A.3(1) was violated by paying the bonus
> only once a year,* or by refusing to pay the full amount of
> the bonus when it became due.

*Dallenbach*, 459 N.W.2d at 488 (emphasis added).[7]

Similarly, a decade-and-a-half ago, the Iowa Supreme Court also concluded that
even though a particular kind of "bonus" ("gainsharing") is a "wage" within the
meaning of the IWPCL, the employee does not necessarily have a claim for
nonpayment of the "bonus" under the IWPCL. *Phipps*, 558 N.W.2d at 202. In that

---

[7] In *Dallenbach*, this argument was asserted by the *employer* as the basis for
concluding that "bonuses" are not "wages," not by an *employee* asserting that a
"bonus" had not been timely paid as required, because the "bonus" was "wages." *See
Dallenbach*, 459 N.W.2d at 488.

case, the Iowa Supreme Court held that the employer did not "owe" the plaintiff the bonus payment, because the plaintiff was on probation on the payout date, which was a violation of one of the employer's established eligibility criteria. *Id.* Indeed, in an unpublished decision, the Iowa Court of Appeals concluded that, where an employer's policy expressly restricted payments of bonuses to persons employed at the time of payout, even though the plaintiff "accrued" the bonus, she was not entitled to payment of the bonus, because she quit before it was paid out. *Matzke v. Mary Greely Med. Ctr.*, 2001 WL 355838, *1 (Iowa Ct. App. April 11, 2001) (unpublished op.).

Under these precedents, it is clear that Johnson's IWPCL claim for payment of the quarterly bonus for the last quarter he worked for Dollar General fails as a matter of law. The "bonus" was wages, *see Runyon*, 653 N.W.2d at 585; *Phipps*, 558 N.W.2d at 198; *Dallenbach*, 459 N.W.2d at 488, but that does not necessarily mean that Johnson is entitled to the payment of the quarterly bonus for the last quarter he was employed by Dollar General. *Phipps*, 558 N.W.2d at 202. This is so, because the "bonus" was not "due," if Johnson failed to meet the eligibility requirements for the payout. *Runyon*, 653 N.W.2d at 586; *Phipps*, 558 N.W.2d at 202. Payment of a "bonus" may not be "due" until much more than a month after the end of the period to which it applies, because whether a bonus is "wages" is separate from the question of when the bonus is "due." *See Dallenbach*, 459 N.W.2d at 488 (holding that an annual bonus was not "due" until February of the following year under the plaintiff's contract with the employer); *Phipps*, 558 N.W.2d at 202 (holding that a bonus was not "owed" to the plaintiff, because he was on probation on the payout date, which was a violation of one of the employer's established criteria); *Matzke*, 2001 WL 355838 at *1 (holding that the plaintiff was not entitled to a bonus, because she quit before it was paid out, contrary to a restriction in the employer's bonus policy). An established criterion for eligibility for a quarterly bonus in the Dollar General "Teamshare" bonus plan under its

Retail Incentive Plan was that the employee be "[e]mployed . . . with Dollar General . . . on the date of bonus payout. . . ." Defendants' Appendix at 50 (Fiscal Year 2009 Store Manager Retail Incentive Plan). Johnson was not employed on the "payout" date of June 5, 2009, for the quarterly bonus in question. He has failed to show that a "payout" date more than a month after the end of the quarter or that the requirement of employment on the "payout" date was contrary to Iowa law.

Therefore, the defendants are entitled to summary judgment on this claim, as well.

## III.   CONCLUSION

Upon the foregoing, the defendants are entitled to summary judgment on all of Johnson's claims. Johnson's FMLA "interference" claims fail as a matter of law, because his last absence was not for a "serious health condition," and his FMLA "retaliation" claim fails, because he could not have had a good faith belief that that absence was because of a "serious health condition." His workers compensation retaliation claim, for discharge in violation of public policy, fails, because he cannot generate a genuine issue of material fact under the applicable "high" causation standard that any adverse employment action by Dollar General was causally related to any workers compensation claim, and his claim against Williams for individual liability would not lie, in any event, under existing Iowa law. He concedes that his "emotional distress" claim is barred as a matter of law. Finally, his IWPCL claim fails, because he was ineligible for payment of a bonus for the last quarter he worked, where he was not employed on the date of "payout" of the bonus, and that eligibility requirement was not contrary to Iowa law.

THEREFORE, the defendants' April 30, 2012, Motion For Summary Judgment (docket no. 14) is **granted in its entirety**.  The defendants are entitled to summary judgment on all of Johnson's claims.  Judgment shall enter accordingly.

**IT IS SO ORDERED**.

**DATED** this 30th day of July, 2012.

_Mark W. Bennett_
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA